321 So.2d 520 (1975)
STATE of Louisiana
v.
Dale BASS and Tommy Bass.
No. 56334.
Supreme Court of Louisiana.
November 3, 1975.
*521 Richard Kilbourne, Clinton, for defendants-relators.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon A. Picou, Jr., Dist. Atty., W. Lee Overton, Asst. Dist. Atty., for plaintiff-respondent.
BOLIN, Justice.
The relators were convicted after a bench trial of illegal night hunting, a violation of La.R.S. 56:124, and each was sentenced to pay a fine of $75.00 and costs or serve 30 days in jail. Since neither the fine nor the jail sentence imposed confers upon relators the right to appeal their convictions and sentences, a writ or review was sought and granted. State v. Bass, 313 So.2d 833 (La.1975). We set aside the defendants' convictions and sentences.
Two assignments of error are relied upon by relators for a reversal of their convictions and sentences; the determination of the issue presented in the first assignment of error depends upon a review of all of the State's evidence to decide the propriety of the trial court's denial of relators' motion for a directed verdict made at the close of the State's case in chief. The second assignment of error complains of the trial court's denial of the motions for new trial filed on behalf of relators, which motions were based upon the claim that there was no evidence upon which to base a guilty verdict in this matter.
On December 7, 1974, at approximately 1:00 A.M. the pick-up truck in which relators and one of their wives was travelling was forced to stop in the middle of a gravel road in East Feliciana Parish because the vehicle of Wildlife and Fisheries Agent Woodside was blocking the road. When relators' vehicle stopped Agent Woodside approached the truck and questioned their purpose for being on the rural road at that time of night. After relators stated they were returning home from the Pinehaven Lounge the Agent noticed two high-powered rifles in the cab of the truck. The Agent proceeded to search the vehicle, both the cab and the truck bed, but no further evidence was found. The Agent called his supervisor, who advised that he should arrest the relators for illegal night hunting. This prosecution ensued.
During the presentation of the State's case, the evidence revealed that the road on which the relators were travelling was to some extent flooded on the evening in question, there having been a heavy rain earlier that day. Agent Woodside testified that the area was known to be heavily populated with deer. He also testified that the search of relators' truck revealed no game and that he discovered nothing (presumably nothing related to the offense suspected) except the two rifles which were in plain view. In response to questions it was revealed that the Agent found no headlights, such as those often used in night hunting, but arrested the relators because *522 they had high-powered, loaded rifles on a flooded rural road at a late hour. In response to cross-examination Agent Woodside admitted that he did not see either relator point a gun at any game and did not see anyone get out of the truck holding a firearm. There was no testimony that shots were observed or heard.
The statute which the relators were found to have violated, La.R.S. 56:124 reads, in pertinent part:
"No person shall:
"* * *
"(9) Hunt with firearms of any type or with bows and arrows after one-half hour after official sunset and before one-half hour before official sunrise. This prohibition shall apply to hunting of outlaw quadrupeds as well as to all other hunting, but it shall not affect night hunting of raccoons or oppossums under Paragraph (7) of this section."
Corpus Juris Secundum defines the noun, "hunting" as "[t]he act of pursuing and taking wild animals; the chase." (Footnote omitted.) 41 C.J.S. Hunting at 373.
The Random House Dictionary of the English Language defines the verb, "hunt," thus: "to chase or search for (game or other wild animls) for the purpose of catching or killing."
A close review of the evidence presented during the State's case in chief prompts a conclusion that there was no evidence that relators were "hunting with firearms * * * after one-half hour after official sunset and before one-half hour before official sunrise * * *." While the evidence presented may be construed as supporting a suspicion that relators may have been engaged in this illegal activity, there is an absolute lack of evidence that the crime was in fact committed. The State's witnesses were unable to testify that they saw the relators, or either of them, holding a weapon, or stalking an animal, or behaving in a manner which clearly indicated that they were engaged in an attempt "to chase or search for (game or other wild animals) for the purpose of catching or killing."
This assignment of error has merit and warrants reversal of the convictions and sentences which we review.
Relators' second assignment of error complains of the trial court's denial of the motions for new trial filed on their behalf. In a per curiam which appears in the record, the trial court appears to support its verdict and the consequent conviction on the relative demeanor of the State and defense witnesses (the relators). The trial court also reviewed some of the conflicts in the testimony of the witnesses (Agent Woodside said one of the rifles was out of the gun rack, leaning against the seat, with the muzzle on the floor, while the relators testified that both rifles were in the gun rack). Some of the observations which appear in the trial court's per curiam are not supported by the record.
While it may be that the trial court was correct in denying the new trial motions on the basis of the "no evidence to support a conviction" allegation, if the demeanor and testimony of the defense witnesses is considered, it is plain that the new trial motions renew the objection to the denial of a directed verdict at the close of the State's case in chief. Therefore, on this basis, the denial of the new trial motions was likewise error.
When the State fails to prove an essential element of the crime charged a directed verdict must be granted. See State v. Bradley, 310 So.2d 582 (La.1975). When, as here, there is no evidence that a crime has been committed, certainly the same result must obtain.
The convictions and sentences are set aside and the relators ordered discharged.