SUMMERS, Chief Justice.*
This was an application to review a conviction for hunting at night with light and gun, a violation of La.Rev.Stat. 56:124(9). Stephen P. Fonseca was sentenced to pay a fine of $200 and to suffer forfeiture of the spotlights used in the offence. We granted certiorari. 374 So.2d 679.
On January 30, 1979 at approximately 10:30 p. m., Agent Ray Mouton of the Louisiana Wildlife and Fisheries Commission drove from Old Highway 90 to Highway 307 in Lafourche Parish, Louisiana, and parked off Highway 307 on a boardroad. Agent Max J. Dupre, Jr. parked behind Mouton in a second vehicle. The two agents were investigating various reports of illicit deer hunting along Highway 307. At approximately 10:45 p. m. the two agents saw a light green 1971 GMC pickup drive slowly down Highway 307, shining spotlights out of each side of the truck. The agents, their lights out, followed the pickup down the highway for about 5 miles, Mouton about a hundred yards behind the pickup and Dupre farther behind him.
The agents testified that the road was bordered by fields with trees “approximately an acre” from the highway. The two men in the pickup proceeded at from 5 to 10 miles an hour, shining the' spotlights back and forth across the fields and treeline. No shots were fired; at no time did the men in the truck stop or call out as for dogs.
*391 After following the pickup about 5 miles, Mouton pulled up beside it, turned on his red lights and stopped the truck. As the truck stopped, Mouton saw the passenger, Daniel M. Cruse, move a rifle down from the window and place it on the seat of the truck. The agents told the two men in the pickup that they were hunting at night; the two said they were looking for lost coon dogs. The agents advised them that the land bordering the highway was private, a trapper’s lease, and closed to hunting; the two then said they had just been hunting along Old Highway 90 and were looking for dogs that had escaped across the marsh from a point later estimated to be about a mile from the scene of the stop.
The agents looked by flashlight at the two dogs in the rear of the pickup and saw that both were dry and also that both men’s trousers and boots were clean and dry. At trial, both agents noted that any dogs hunting over the territory pointed out by the two men would necessarily have been wet and dirty, and that anyone working with the dogs off the highway would have been wet and muddy as well. Further, Mouton had come off Old Highway 90 a few minutes before first seeing the pickup on Highway 307 and had seen no vehicles or hunters on the former road.
The agents found a loaded .22 rifle on the seat of the pickup and a loaded .30-06 rifle in a case behind the seat. Agent Mouton was not sure whether the large-bore rifle could have been withdrawn without getting out of the truck and moving the seat forward. Agent Dupre was positive that it could have. Two spotlights running off the pickup’s electrical system were also found and confiscated. No game or carcasses were found. The agents cited the two men, defendant Stephen Fonseca and Daniel Cruse, each for three violations: hunting from a moving vehicle, in violation of La. Rev.Stat. 56:124(1); hunting at night with light and gun, in violation of La.Rev.Stat. 56:124(9); and hunting from a public roadway, in violation of La.Rev.Stat. 32:292.
At trial, the two Wildlife agents testified to the facts set out above. At the close of the State’s evidence, the defense moved for a directed verdict of acquittal; after argument, the motion was denied. The defense then put on the two defendants, Stephen P. Fonseca, the driver of the pickup, and Daniel M. Cruse, the passenger. Daniel Cruse testified that the two had gone coon hunting at about 7:30 p. m. with three dogs. After hunting for about an hour, they had killed six raccoons, but one registered female Blue Tick Hound had gotten a scent and run off into the marsh, heading away from Old Highway 90 toward Highway 307. It was raining and wet and the two went to Cruse’s house where he changed out of his wet clothes and boots. They had a cup of coffee, strung the six raccoons up, and then drove out to Highway 307 to look for the lost dog. He said it had been about two hours since the other two dogs had been picked up and put in the truck and that he kept hay in the back of the truck to keep the dogs dry. When asked why they had not stopped to call the missing dog, he said, “If you call a dog out on that road, and you don’t stay there until that dog comes, or if that dog comes after you leave, and somebody else passes, you don't got no more dog.” He further testified that the two found the missing dog the next morning where they had been hunting off Old Highway 90.
Stephen P. Fonseca was called and it was stipulated that his testimony would be substantially the same as Cruse’s. In addition, he produced registration papers on a female Blue Tick Hound which the trial court permitted to be introduced into evidence solely on the issue of the value of the dog, remarking that the value might be some evidence on the eagerness of the owner to search for it.
The court acquitted the two defendants of the charge of hunting on a public highway on the ground that La.Rev.Stat. 32:292 appears in the title, “Motor Vehicle Traffic Regulations”, and that the statute empowering the agents of the Wildlife Commission did not appear to give them the authority to enforce motor vehicle statutes. The court acquitted the defendants of the *392 charge of hunting from a moving vehicle on the ground that La.Rev.Stat. 56:124(1) relates to deer hunting, not coon hunting. The court convicted the two of hunting at night with light and gun, a violation of La.Rev.Stat. 56:124(9).
The defendant Fonseca made three assignments of error: 1) that the trial court should have granted a directed verdict as the State failed to prove an essential element of the crime charged; 2) that the trial judge rendered a verdict that was not responsive to the bill of information; and 3) that the trial judge did not adequately define the reasons for his verdict.
The defendant argues that the agents heard no shots, saw neither defendant holding a weapon, found no carcasses of game or non-game quadrupeds, and saw no evidence of behavior that clearly indicated the stalking or chase of animals for the purpose of killing them. The defendant further notes that the lights and guns were never directly introduced into evidence and, on the authority of State v. Bass, 321 So.2d 520 (La.1975), argues that the State failed to present a prima facie case.
The statute in question, La.Rev.Stat. 56:124(9), provides that:
“No person shall:
[[Image here]]
“(9) Hunt with firearms of any type or with bows and arrows after one-half hour after official sunset and before one-half hour before official sunrise. This prohibition shall apply to hunting of outlaw quadrupeds as well as to all other hunting, but it shall not affect night hunting of raccoons or opossums under Paragraph (7) of this section.”
Thus the elements of the offense are 1) the hunting, with 2) firearms or bows and arrows, at a time 3) later than one-half hour after official sunset and earlier than one-half hour before official sunrise, subject to an exception in favor of the raccoon and opossum hunting authorized by La.Rev. Stat. 56:124(7).
The agents testified that the defendants were in possession of two loaded firearms and Agent Mouton testified that Cruse moved one loaded rifle from the truck window down onto the seat when the truck was stopped. Thus there was evidence from which the court could have concluded that the defendants were using firearms. The agents testified that they began following the pickup at about 10:45 p. m. and followed it at a speed of from 5 to 10 miles an hour for about 5 miles, from which it can be reasonably inferred that they followed the truck between thirty minutes to an hour. Thus the surveillance lasted from about 10:45 p. m. until some time between approximately 11:15 p. m. and 11:45 p. m. Agent Mouton testified that he established the time of official sunset by reference to official regulations issued by his department but in any event, we are entitled to take judicial notice of the facts of nature under La.Rev.Stat. 15:422(6). That 10:45 p. m. is later than one-half hour after sunset and that 11:45 p. m. is earlier than one-half hour before sunrise we take to be two of those facts of nature.
The exception contained in La.Rev. Stat. 56:124(7) is the subject of the second assignment of error and will be dealt with below. Thus the only element on which direct testimony was not entered was on the element of hunting. It is presumably on this element that the defendant cites Bass, supra. In that case a man and his wife were stopped by a Wildlife Agent on a deserted, flooded rural road in an area claimed to be heavily populated by deer. Two high-powered rifles were found in the defendants’ vehicle in plain view, although the evidence was absent as to the rifles’ location and position in the truck. No handlights or game were found and no testimony was adduced to the effect that the defendants were doing anything other than driving along the road. This Court reversed the defendants’ convictions on the ground that there was no evidence that a crime had been committed and that a directed verdict should have been granted.
The distinctions between Bass and the instant case are immediately apparent. In Bass the defendant couple was merely driv *393 ing down a country road; here the defendants were driving slowly down a road searching the roadside with spotlights. In Bass there was no showing that the weapons were available or in use; here there was testimony that one rifle was being held at a vehicle window until the stop, after which it was set down on the seat, and that the other rifle was accessible without moving the seat of the truck. Further, in the case at bar, the presence of dogs and the defendants’ statements that they had been hunting on the neighboring highway were available for whatever inferences might fairly have been drawn therefrom. This defendant was in a truck with a companion with a loaded rifle at the ready in the truck window. They were shining spotlights back and forth across the adjoining fields. Hunting dogs in the back of the truck completed the picture of the hunt.
The instant case is much more akin to State v. Hicks, 376 So.2d 118 (La.1979), where we affirmed a conviction for hunting deer at night and hunting from a moving vehicle. There the defendants likewise contended that the State had presented insufficient evidence to sustain a conviction, i. e., that a directed verdict of acquittal should have been entered. The facts upon which the conviction was had and affirmed were that the defendants were watched for about 30 to 45 minutes as they drove along a rural, private road at night, with one of the defendants in the back of their pickup truck holding a fully loaded rifle of the appropriate caliber for hunting deer and shining a spotlight into the fields and woods on either side of the road.
We are satisfied that there was a sufficiency of evidence from which the trial judge might fairly and reasonably have drawn the inference that the defendants were in search or chase of wild game for the purpose of catching or killing, the definition adopted in Bass. Thus the final element of the offense defined in La.Rev.Stat. 56:124(9) was present and the trial judge correctly denied the directed verdict.
The defendant’s second assignment of error is:
“The trial judge indicated that since the defendants admitted killing six raccoons that they were in violation of RS 56:124(7) which he believed indicated that it was lawful to hunt raccoons only at a time other than trapping season. It is plain from the . . . Bills of Infor-mations . . . that a conviction based on RS 56:124(7) is not responsive to the crimes charged and violates Article 815 of the Louisiana Code of Criminal Procedure in that the verdict was not guilty of the crime as charged nor guilty of a lesser or included grade of the offense. Furthermore, it violates the defendant’s right to be informed of the nature and cause of the accusation against him as guaranteed by Article 1, Section 13 of the Louisiana Constitution of 1974 in the due process clause of the Constitution of the United States.” [Sic.]
Without animadverting upon the defendant’s constitutional arguments, a conviction had under La.Rev.Stat. 56:124(9) was responsive to the information and the second assignment is without merit. The trial judge’s reasons for the conviction, as contained in the transcript before this Court, were:
“ . . . With reverence to 89056, ‘State of Louisiana vs. Stephen P. Fonse-ca’, Hunting at Night with Light and Gun, the Court is convinced beyond a reasonable doubt that the two defendants were, in fact, hunting at night in violation of this particular statute, and therefore a verdict of guilty will be entered, and the same in 89047, and that’s for two reasons. One, is that I think they were hunting at the time they were arrested, and they also admitted on the stand that they were hunting coons earlier that night with light and gun, and contrary to a common belief, the law is that you can hunt coons at night provided you have two hunters, one gun, and so forth, that you have to follow ‘to the letter,’ provided you do not do it during trapping season. So, regardless of the second, I mean the first, I find that there is — but as I read the law, it says that the Wildlife and *394 Fisheries can establish regulations with reference to coon hunting at night with two dogs, two or more hunters, but it can only be done when there is no trapping. If that’s been changed, it’s not in the law. But the Court finds that you were hunting at night with a light and gun.”
The clear intendment of the foregoing is that the trial court found the defendants guilty of hunting because he believed they had been hunting at the time of the stop, and also noted that they had been by their own admission hunting before. Presumably the aside referred to whatever inferences the court might have drawn from the defendants’ prior hunting, but does not detract from the plain finding that they were hunting at the time charged in the information.
The references to two dogs, two or more hunters, etc., are clearly references to La. Rev.Stat. 56:124(7), the statute which prohibits the use of lights for taking animals at night and which, as noted in the discussion of the first assignment of error supra, is included by reference as an exception to the terms of La.Rev.Stat. 56:124(9). Section 124(7) provides:
“No person shall:
[[Image here]]
“(7) Take or hunt deer or fur bearing animals with headlights or bull’s eyes. However, the Louisiana Department of Wildlife and Fisheries shall establish a bag limit for other than the trapping season during which it shall be lawful for parties of two or more hunters, and with one or more dogs, to hunt raccoons or opossums at night with lights and to carry on such hunts, for the purpose of taking raccoons or opossums, not more than one standard .22 caliber rimfire rifle and to use single ball rimfire ammunition; provided, however, that farmers may hunt raccoons or opossums as provided by R.S. 56:112, with a .22 caliber rifle, when they are found destroying crops of corn, sweet potatoes, watermelons, pecans and other crops, with no bag limit anytime of the year. To take or hunt raccoons or opossums from a boat or vehicle is prohibited. No one shall pelt or sell the skins or carcasses taken during the open trapping season unless he is the holder of a valid trapper’s license which shall be required in addition to his basic hunting license.”
Thus, contrary to the defendant’s contention, he was not found guilty of a violation of La.Rev.Stat. 56:124(7); rather, he was found guilty of a violation of La.Rev.Stat. 56:124(9). It merely happens that by the terms of the statute under which he was convicted, it is an element of the offense that the exceptions enumerated in Section 124(7) not be applicable. The terms of the latter section are to the effect that outside the trapping season, the Department of Wildlife may by regulation permit hunting at night and with lights for raccoons and opossums, so long as those regulations require at least two or more hunters in each party, with one or more dogs and not more than one rifle of a specified caliber and type for each such party. As the same section makes unquestionably clear, that limited exception shall not apply to hunting from a vehicle or boat.
The defendant has inserted in his application and in his brief here a copy of a Department of Wildlife and Fisheries pamphlet which states on its cover that it is a digest of rules and regulations adopted pursuant to La.Rev.Stat. 56:115 and which therefore have the effect of law. In one place, on page 1 of that publication, it says:
“RACCOON AND OPOSSUM: No closed season. Raccoon bag limit, 1 per person per night. Can be taken only at night by two or more hunters with one or more dogs and one .22 rim fire. Hunting from boats or motor vehicles prohibited. No limit Dec. 1-Feb. 28.”
This section, circled by the defendant for emphasis, gives his case no support, for the prohibition of hunting from a vehicle is reiterated. That the defendant was acquitted under the charge brought under La. Rev.Stat. 32:292 is irrelevant, for several reasons. First, the acquittal was entered because the trial court believed the Wildlife agents did not have the authority to enforce *395 what the court viewed as a motor vehicle traffic regulation. We are not called upon to pass on the merits of the view; what is important is that the acquittal was rendered upon a procedural ground, not on the merits of the charge. Second, the gravamen of Rev.Stat. 32:292 is hunting or discharging firearms on a public roadway, not from a vehicle. Thus certain types of behavior would fall within the ambit of both statutes but only in a limited number of instances, as where a firearm was discharged while hunting from a vehicle which was itself on a public roadway. In a large class of cases, behavior which would violate one statute would not violate the other and vice versa. Again, the defendant was convicted of hunting at night with a light, where he was in fact hunting from a vehicle, which is expressly excluded from the exceptions contained in Rev.Stat. 56:124(7) and thus specifically included within the proscriptions of Rev.Stat. 56:124(9).
It may also be noted that on page 7 of the defendant’s pamphlet it says:
“1978-79 TRAPPING SEASONS
“Beaver, Bobcat, Coyote, Fox, Mink, Muskrat, Nutria, Opossum, Otter, Raccoon, Ring-tailed cat, Skunk — December 1-February 28.”
As the violation occurred on January 30, it was within the trapping season and La.Rev. Stat. 56:124(7), quoted above, excludes night hunting with lights for raccoon and opossum “for other than the trapping season”. Thus it appears that the exception in favor of raccoon and opossum hunting does not apply during the time that the violation occurred, even had the defendants been hunting in a manner otherwise permitted by law. The second assignment of error is therefore without merit.
The defendant’s third assignment of error relies on the Department of Wildlife pamphlet referred to above, the merits of which have been disposed of in discussing the second assignment of error. In addition, the defendant contends that La.Rev. Stat. 56:141 confers a blanket authorization to the effect “that raccoon hunters may pursue their sport at anytime.” The section in question states:
“§ 141. Training of dogs during closed season
“A. It shall be legal for hunters, dog trainers, or dog handlers to train their dogs, any breed or species, during the closed season. During such training sessions said trainer or handler may carry side arms, discharge blank cartridges without ball ammunition , but cannot take or kill game or birds of any type or kind during such training sessions, except raccoons. This Section shall not apply in any manner to raccoon hunters who may pursue their sport at any time, nor to persons taking pen raised quail under the provisions of Section B hereof. Whoever violates the provisions of this Section by the taking or killing of game or birds, excluding raccoons which may be taken while training hunting dogs, shall be fined or imprisoned or both as prescribed in R.S. 56:139.”
In effect, the defendant urges that the phrase “ . . . who may pursue their sport at any time, . . .” is to be read to use a permissive “may” so as to give the same effect as if the sentence were to read “ . . . who are hereby permitted to pursue their sport at any time, . . . .” However, the sentence is subject to another, more logical interpretation which would give the same effect as if sentence were to read “This Section shall not apply in any manner to such raccoon hunters as may pursue their sport at any time otherwise sanctioned by law, . . . ”, one such sanction being while training dogs.
The latter interpretation is strengthened by the two other references to raccoon killing linked grammatically and logically to killing while in the course of training dogs. It follows that La.Rev.Stat. 56:141 must be considered as a limited exception to a general penal statute that permits killing of raccoons under the stated conditions only while engaged in training hunting dogs. There is no evidence in the record before us to suggest that either defendant was attempting to train the dogs which were confined in a cage in the back of the pickup *396 truck, nor was any such suggestion made at trial or before this court. Thus we find the third assignment of error without merit.
For the reasons assigned, we affirm the conviction and sentence of the trial court. Nothing in this opinion, however, is to be taken as expressing an opinion as to the merits of the trial court’s acquittal of the defendant on the other two of the three original charges.
STONE, J., ad hoc, and CALOGERO, J., dissent.

 The Honorable Jesse N. Stone, Jr., participated in this decision as Associate Justice, ad hoc.