FORET, Justice Ad Hoc.*
Omer Scott Crawford (defendant) was charged by bill of information with hunting deer at night (count 1) in violation of LSA-R.S. 56:123(E)(2), and with hunting from a moving vehicle (count 2) in violation of LSA-R.S. 56:124(1). The deer hunting season was legally open in DeSoto Parish on November 24, 1980, the date on which the aforementioned offenses allegedly occurred.
Defendant was tried and found guilty of both offenses by the trial court on February 25, 1981. On count # 1, the trial court sentenced defendant to pay a fine of $250.00 and to imprisonment in the parish jail for a period of thirty days. On count # 2, the trial court sentenced the defendant to pay a fine of $50.00 and to imprisonment in the parish jail for a period of twenty days, which 20-day portion of the sentence was suspended and defendant placed on one year’s unsupervised probation. The trial court ordered that these sentences run concurrently.
Defendant applied for writs of certiorari, prohibition and mandamus and for a stay order with this Court on March 16, 1981. This Court, on April 16, 1981, granted a writ of certiorari to review defense coun *1222 sel’s contention that the trial court erred in denying his motion for acquittal when the State’s evidence failed to establish, beyond a reasonable doubt, that the accused was hunting on the night of his arrest. We hereby order that the writ be made peremptory and that there be judgment in favor of defendant reversing his conviction and sentence and dismissing the charges against him.
Because of our decision herein, we need only consider defendant’s Assignment of Error # 2.
ASSIGNMENT OF ERROR # 2.
Defendant contends that the trial court erred in finding him guilty of violating LSA-R.S. 56:123(E)(2) and LSA-R.S. 56:124(1) in that there was> no evidence upon which to base a determination that the defendant was hunting or taking game and therefore guilty of violating the statutes aforementioned.
FACTS
Essentially, the evidence presented by the State and defendant at trial revealed the following: Wildlife and Fisheries Agents Dalton Green and Ronald Morris, acting on a tip from a confidential informant, staked out an area of DeSoto Parish that consisted of pastureland owned by defendant’s grandfather, Alfred Scott Crawford. Agent Green instructed Agent Morris to walk onto the Crawford farm and make his way to an area where rye grass was growing. Meanwhile, Agent Green would take up a position some three miles away. On November 24, 1980, at approximately 5:30 P.M., the agents put their surveillance plan into action. At approximately 5:45 P.M. Agent Green received a call on his walkie talkie from Agent Morris advising him that a truck was coming into the fields under surveillance.
Agent Morris testified that he saw a truck, similar to the one owned by defendant, enter the field and begin to move about in a somewhat erratic manner. The truck at one point made a complete circle. Agent Morris was able to watch the truck for about twelve minutes and stated that during that time he heard no shots; did not see any type of “spotlight” being used; did not see the truck stop; never saw any gun being pointed out of the windows of the vehicle; and never saw any signs of freshly killed deer. He did testify that he thought he heard the truck stop in another field and some talking going on.
Defendant testified that he was driving in an erratic manner because he was attempting to avoid certain obstacles in the field, i. e., old ditches and gulleys, and stump holes that remained after trees had been pushed down some years before. Defendant stated that the full circle he made resulted from his driving around a swampy area in one of the fields. Agent Morris testified that it was dark by the time that he reached the area to be placed under surveillance and that he was unable to tell whether any obstructions did in fact exist. Further, he did not walk through the fields in an effort to determine the nature of the terrain. However, he did testify that, while the truck was passing near him, he could see no obstructions that the driver may have been attempting to avoid. Agent Green had been to the area a couple of days earlier, but he too failed to go into the fields and simply observed them from a distance.
Agent Green drove to the Crawford farm after receiving the information regarding defendant’s conduct from Agent Morris. He arrived at the farmhouse at approximately the same time that defendant did, but from another direction. It was then approximately 6:00 P.M. Agent Green confronted defendant with the information he had and told defendant that it would be necessary for him to look in the truck. He did this and found a loaded 30/30 rifle (one cartridge in the chamber and two in the magazine) lying on the seat beside the defendant.
It was at this time that the State contended that defendant made a number of contradictory statements. Defendant told Agent Green that he had driven through the fields looking for some cattle and that *1223 he was not a hunter. Defendant admitted at trial that he lied when he said he wasn’t a hunter. But, he testified that, as for his assertion that he was looking for cattle, he really had no specific purpose in mind and was just killing time. Defendant also told Agent Green he had talked to a man he had seen earlier in the day and had planned to help find a deer the man had killed. We note that this was probably the conversation Agent Morris heard. Defendant identified this man to Agent Green, who testified that the story had been checked out. However, the State presented no evidence as to whether the man had corroborated defendant’s story. Defendant’s grandfather indicated that he had talked to the man and that his grandson was telling the truth. Defendant stated that the only reason that he lied to Agent Green was because he was scared.
Defendant’s grandfather testified that the terrain was essentially that as testified to by his grandson. He stated that there were no roads through the fields, but only trails made where vehicles usually traveled. Both defendant and his grandfather testified that it was not unusual for defendant to simply take off and go riding around the farm and that he had done this many times in the past. Further, he usually carried a gun with him in his truck as do many of the residents of DeSoto Parish. Defendant, who is 19 years old, was described by his grandfather as being a very nervous and restless sort of person. Finally, both Agent Morris and defendant testified that they saw a deer in the fields on the night of defendant’s arrest.
Defendant contends that the State failed to prove beyond a reasonable doubt that he had committed either of the two crimes with which he was charged. Defendant phrases this contention in terms of this Court’s previous “no evidence” standard of review. State v. Cole, 161 La. 827, 109 So. 505 (1926); State v. Williams, 262 La. 160, 262 So.2d 507 (1972).
However, the present standard of review is that a convicted defendant’s attack upon the sufficiency of the State’s evidence used to prove his guilt is judged by determining whether, “after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt”. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Morgan, 389 So.2d 364 (La.1980); State v. Harveston, 389 So.2d 63 (La.1980); State v. Byrd, 385 So.2d 248 (La.1980).
The statutes in question, LSA-R.S. 56:123(E)(2) and LSA-R.S. 56-124(1) provide, in pertinent part, the following:
“§ 123 E.(2) Whoever violates the provisions of this section by the hunting or taking of deer after one-half hour after official sunset and before one-half hour before official sunrise shall for the first offense be fined not less than $350 and not more than $500 and shall be imprisoned in jail for thirty days.*
§ 124. No person shall: (1). . .hunt or take game quadrupeds or game birds from a moving land vehicle or air-craft_**”
A reading of these provisions makes it clear that “hunting or taking” is an essential element of either offense. “Take” is defined in LSA-R.S. 56:101(14) as the “act of pursuing, netting, capturing, snaring, trapping shooting, wounding, or killing by any means or device whatsoever.” The broader term “hunting” has been defined by this Court as “the act of pursuing and taking wild animals” or, more simply, as the “search for game or other wild animals”. State v. Bass, 321 So.2d 520 (La.1975), at page 522.
In at least three recent cases this Court has been asked to construe this terminology in the context of a defense claim of “no evidence”. The first of these cases, State v. Bass, supra, involved a situation in which a man and his wife were stopped by a wildlife agent on a deserted, flooded, rural road in an area claimed to be heavily populated by deer. Two high-powered rifles were found in the defendant’s vehicle, but no hand light or game was found and no testimony was *1224 adduced to the effect that defendants were doing anything other than driving along the road. This Court reversed the defendants’ convictions on the ground that there was no evidence that a crime had been committed.
The later cases of State v. Hicks, 376 So.2d 118 (La.1979) and State v. Fonesca, 378 So.2d 389 (La.1979), involve defendants who had been observed driving slowly along rural highways for upwards of thirty minutes. In each case, spotlights were being utilized to search the roadside and at least one of the vehicles’s occupants was seen holding a rifle of appropriate caliber for the shooting of deer[1]. On the basis of this evidence, the defendants’ convictions for hunting at night and/or hunting from a moving vehicle were affirmed.
In the instant case, evidence of defendant’s guilt was not so strong as that presented in Hicks and Fonesca, but not so weak as that introduced in Bass. Essentially, the conviction was based on evidence that the defendant was seen weaving his lighted pickup truck through a rye grass field, believed to be frequented by deer, with a partially loaded 30/30 caliber rifle on the seat beside him. While this evidence could easily support the wildlife agents’ suspicion that defendant might be engaged in illegal activity, the defendant’s conduct was just as easily susceptible of other explanations, particularly in view of Mr. Scott’s testimony that defendant frequently cruised around his farm and pastureland and that the trails he followed on these excursions were not in particularly good condition.
However, in construing the evidence in the light most favorable to the prosecution; we accept Agent Morris’s testimony that, when defendant was passing near him, his weaving was not part of an effort to avoid potholes, tree stumps, or other obstacles. In addition, defendant’s apparently inconsistent attempts to justify his behavior to Agent Green perhaps justified a conclusion that defendant felt he had done something wrong. Nevertheless, even an assumption that defendant was actively searching the nearby woods and fields is insufficient to warrant a finding, beyond a reasonable doubt, that he was “hunting”. Defendant’s assertion that he was searching for a friend was bolstered by Agent Morris’s testimony that he thought he heard the truck stop and a conversation ensue. Further, the short non-stop nature of defendant’s ride weighed against the State’s hunting allegations. Perhaps most damaging to the State’s case, however, was testimony by both the defendant and Agent Morris that they had spotted a deer on their way to the rye field. If this testimony be accepted, the defendant’s failure to take a shot or even to stop his truck achieves even greater significance. In short, the instant case appears more closely akin to State v. Bass, supra, than to others considered by this Court.
We conclude that, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found, beyond a reasonable doubt, the existence of all the essential elements of the crimes defendant was alleged to have committed.
DECREE
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the writ of certiorari issued herein be made peremptory and that there be judgment in favor of defendant, Omer Scott Crawford, reversing defendant’s convictions and sentences and dismissing the charges against him.

REVERSED.

 Judges J. Burton Foret, Jimmy M. Stoker and P. J. Laborde of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, and Jack C. Watson.

. In Hicks, one of the defendants was positioned in the rear of a pickup truck holding a fully loaded 30-30 calibre rifle while simultaneously shining a spotlight into the fields and woods on either side of the road. Fonesca presented a somewhat less compelling situation in which one of the truck’s occupants held a rifle (inside the truck) until the vehicle was stopped by wildlife agents.