660 So.2d 130 (1995)
STATE of Louisiana, Appellee
v.
Dale E. NEILSON, II, Appellant (Two Cases).
STATE OF LOUISIANA, Appellee
v.
Reggie SCOTT, Appellant.
Nos. 27239-KA, 27240-KA and 27250-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
*131 Alexander L. Doyle, Houma, for appellant.
Don Burkett, District Attorney, Mansfield, for appellee.
Before HIGHTOWER, BROWN and STEWART, JJ.
BROWN, Judge.
Defendants, Dale Neilson and Reggie Scott, were found guilty of hunting deer during illegal hours. Neilson was also found guilty of operating a motor vehicle while intoxicated ("OMVI"). Both defendants appeal, challenging the sufficiency of the evidence upon which they were convicted. We reverse the hunting violation and affirm the conviction for OMVI.

FACTS
During the night of November 17, 1990, in a heavily hunted area of DeSoto Parish, agents for the Louisiana Department of Wildlife and Fisheries were looking for night hunters. They were notified by the DeSoto Parish Sheriff's Office that a small red vehicle was seen in the area. Agent Dalton Green drove to the location where the vehicle was spotted and saw the tail-lights of a car entering a parking area in front of a hunting campsite. It was shortly after midnight when Agent Green pulled in behind the vehicle, a small red Nissan. Dale Neilson was driving and Reggie Scott was in the front passenger seat. Neilson's uncle came out of the deer camp.
At this time, Agents Randy Greer and Kitt Carson arrived. In response to questioning, defendants stated that they had driven from Houma, Louisiana, and had been cruising nearby logging roads scouting for deer in anticipation of hunting the next morning. As the questioning progressed, defendants grew belligerent and displayed signs of intoxication. Agent Carson attempted to administer a field sobriety test to Neilson, who refused to cooperate after failing the initial part of the test. Meanwhile, Agents Green and Greer conducted a limited search of the vehicle, in which they found several empty beer cans, hunting clothes, camping equipment and two high-powered hunting rifles.
Both defendants were charged with hunting deer during illegal hours and hunting deer from a public road. Neilson was also charged with hunting deer from a moving vehicle, driving with a suspended license and *132 second offense operating a motor vehicle while intoxicated. Defendants' cases were consolidated and tried before a judge. Neilson and Scott were both found guilty of hunting during illegal hours. Defendants, however, were acquitted of hunting from a public road and hunting from a moving vehicle. Each defendant was fined $1,500 and given a 30 day suspended jail sentence. Neilson was found guilty of first offense OMVI and acquitted of the other traffic charge. Neilson was fined $250, given a 120 day suspended jail sentence and placed on six month's probation. On appeal, defendants argue that the evidence presented at trial was insufficient to support their convictions.

DISCUSSION
The preferable procedural vehicle for raising the issue of sufficiency of the evidence is by a motion in the trial court for post-verdict judgment of acquittal. LSA-C.Cr.P. Art. 821. Defendants did not present the sufficiency issue to the trial court, but raise it on appeal by arguing that the evidence does not sustain the verdict. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The standard enunciated in Jackson and legislatively embodied in LSA-C.Cr.P. Art. 821 is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir. 1992), writ denied, 617 So.2d 905 (La.1993). Direct evidence consists of testimony from a witness who actually saw or heard an occurrence at issue. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common sense. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992).
With these precepts in mind, we address defendants' claims.

Hunting During Illegal Hours
At the time of the offense, the relevant statutory provision was LSA-R.S. 56:123 (repealed and replaced by LSA-R.S. 56:116 and 56:116.1), which stated in part that "game quadrupeds may be taken in the open season... only from one half hour before official sunrise to one half hour after official sunset." LSA-R.S. 56:123(C). The statute's penalty provision assessed fines and/or incarceration for the "hunting or taking of deer after one-half hour after official sunset and before one-half hour before official sunrise." LSA-R.S. 56:123(E)(3)(a). A reading of these provisions makes it clear that "hunting or taking" is an essential element of the offense. State v. Crawford, 403 So.2d 1221 (La.1981).
The evidence presented at trial consisted solely of testimony from Wildlife and Fisheries Agents Green, Greer and Carson. The agents testified that they received various reports regarding a suspicious red vehicle. Agent Green observed a red vehicle turning down a dirt road in the direction of a remote deer camp. The car stopped at the camp, Agent Green pulled in behind it, and almost immediately the other agents arrived. Statements given by defendants indicated that they had been traveling logging roads looking for deer to hunt the next day. Two high-powered rifles were found on the middle of the car's front seat.
On the other hand, the agents testified that they did not hear any shots fired from defendants' car, nor was the barrel of any weapon seen protruding from the car's windows. No spotlight was found in the car and there was no evidence of a freshly killed deer. Agent Greer testified that he removed the rifles from the car, but could not state whether they were loaded or whether any ammunition was found.
In his oral reasons for judgment, the trial judge discussed the definition of the term "hunting":

*133 Hunting is a broad, broad term. And in this case, there is no testimony that the guns were loaded. The officer could not remember whether they were loaded or not. There was no evidence that there was ammunition. The only testimony is from the Defendants, that they were looking for deer with the headlights of the vehicle. They planned to hunt the next day with two (2) high powered rifles in the vehicle.... However, taking hunting within the definition of State versus Crawford, as defined in several other cases, the term hunting has been defined as "the act of pursuing and taking of wild game" or more simply as "the search for game or other wild animals." And that was State versus Bass they were citing.... [B]y the Defendants' own statements, they were obviously looking for deer during illegal hours and the Court finds them both Guilty of the offense of Hunting during Illegal Hours. (emphasis added).
The court in Crawford, supra, defined the term hunting with reference to its earlier decision of State v. Bass, 321 So.2d 520 (La. 1975). In Bass, the court relied upon the Random House Dictionary of the English Language and Corpus Juris Secundum to lend meaning to the terms "hunting" and "hunt." The judicially crafted definitions in Crawford and Bass, however, were superseded on September 11, 1981, when the definitions contained in LSA-R.S. 56:8 became effective. Therein, the term "`[h]unt' means, in different tenses, attempting to take." LSA-R.S. 56:8(55). "`Take' means, in its different tenses, the attempt or act of hooking, pursuing, netting, capturing, snaring, trapping, shooting, hunting, wounding, or killing by any means or device." LSA-R.S. 56:8(95).
The term "hunt" has been legislatively defined with reference to the term "take." Terms such as the attempt to trap, shoot, hunt, wound, kill, etc. are used to define "take."
We view the evidence in the light most favorable to sustain the convictions. The state did not show that the rifles were loaded and readied for shooting if a deer was spotted. The evidence upon which defendants' convictions were based does not exclude reasonable doubt that they merely "looked" for the location of deer to improve their chances for a successful hunt the following day. In fact, the trial court concluded that defendants by their own statements were looking for deer during illegal hours and that alone was sufficient under the statute. We conclude that the statutory definitions for "hunting" and "taking" are not so broad as to encompass the limited, relatively passive activity of merely looking for wild game to hunt at a later legal hour. Accordingly, on these facts, defendants' convictions for hunting deer during illegal hours are reversed.

Operating a Motor Vehicle While Intoxicated
In a second assignment, defendant Neilson asserts that the evidence presented at trial was not sufficient to support his conviction for operating a motor vehicle while intoxicated. Neilson was found guilty of violating LSA-R.S. 14:98, which states in part:
A. The crime of operating a vehicle while intoxicated is the operating of any motor vehicle ... when:
(1) The operator is under the influence of alcoholic beverages ... Neilson does not dispute that he was operating the motor vehicle. Rather, he asserts that the evidence presented by the prosecution is not sufficient to prove beyond a reasonable doubt that he was under the influence of alcohol.
Intoxication is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La.1983). What behavioral manifestations are sufficient to support a charge of driving while intoxicated must be determined on a case by case basis. Some types of behavior, independent of any scientific test, is sufficient to support a charge of driving while intoxicated. State v. Edwards, 591 So.2d 748 (La.App. 1st Cir. 1991); State v. Pitre, 532 So.2d 424 (La.App. 1st Cir.1988), writ denied, 538 So.2d 590 (La.1989).
All three Wildlife and Fisheries agents testified that Neilson smelled strongly of alcohol *134 shortly after exiting the driver's side of the car. Agent Greer testified that defendant's speech was slurred, that he was unstable on his feet and had to support himself against the car, and that he was uncooperative. Agent Carson also noted that Neilson staggered, swayed on his feet, and that his speech was slurred and characterized by stuttering. At the scene, Agent Carson attempted to issue a field sobriety test to Neilson beginning with a hand-eye coordination test. When Neilson failed to touch his nose with the index finger of either hand, he grew belligerent and refused to continue the test. Neilson also refused to take an intoxilizer test upon his arrival at the DeSoto Parish jail. Defendants themselves told the agents that they had been drinking. Approximately six empty beer cans were found in the floorboard of defendants' car.
Our review here is limited to an assessment of the sufficiency of the evidence and does not extend to credibility determinations made by the trier of fact. Jackson v. Virginia, supra; State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Carey, 628 So.2d 27 (La.App. 2d Cir.1993), writ denied, 635 So.2d 236 (La.1994).
Defendant Neilson displayed several behavioral characteristics that are commonly associated with intoxication. Furthermore, defendants admitted that they had been drinking and empty beer containers were found in the car. Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the state proved beyond a reasonable doubt the elements necessary to convict Neilson of operating a vehicle while intoxicated. See State v. Armstrong, 561 So.2d 883 (La.App. 2d Cir.1990), writ denied, 568 So.2d 1077 (La.1990); State v. Gillespie, 486 So.2d 984 (La.App. 2d Cir.1986).

CONCLUSION
We vacate defendants' sentences for hunting during illegal hours; however, we affirm defendant Neilson's conviction for operating a motor vehicle while intoxicated.
REVERSED IN PART AND AFFIRMED IN PART.